121 F.3d 531
 134 Lab.Cas. P 33,577, 41 Cont.Cas.Fed. (CCH)
P 77,163,
4 Wage & Hour Cas.2d (BNA) 56,
97 Cal. Daily Op. Serv. 6373,
97 Daily Journal D.A.R. 10,407
 UNITED STATES of America ex rel., Richard SUTTON, Plaintiff-Appellant,
v.
DOUBLE DAY OFFICE SERVICES, INC.; Thomas C. Ringlemann;
Cheryl M. Ringlemann; William Sutton; Tom
Hochmuth, Defendants-Appellees.
 No. 96-16091.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 17, 1997.
Decided Aug. 11, 1997.
 
 Daniel Berko, San Francisco, CA, for Plaintiff-Appellant.
 Matthew F. Quint and Lawrence R. Sussman, Quint & Valkevich, San Francisco, CA, for Defendants-Appellees.
 Appeal from the United States District Court Northern District of California; Fern M. Smith, District Judge, Presiding. D.C. No. CV-92-01909-FMS.
 Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge.*
 FARRIS, Circuit Judge:
 
 
 1
 Richard Sutton brings a qui tam False Claims Act action against Double Day Office Services, Inc., his former employer, alleging that Double Day fraudulently reported to the United States that it was in compliance with the Service Contract Act. Sutton appeals the district court's holding that he lacks standing because his claim is effectively an SCA claim and the SCA bars private rights of action.
 
 
 2
 The district court had jurisdiction pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291, and reverse.BACKGROUND
 
 
 3
 Richard Sutton was employed by Double Day Office Services, Inc., a moving company that had contracts with the United States for moving federal employees. Sutton brought a qui tam relator False Claims Act action on behalf of the United States against Double Day and its officers alleging that Double Day: executed contracts with the federal government that required the payment of prevailing wages; made false statements regarding the services rendered with the purpose of creating the impression that prevailing wages were paid to service employees; had knowledge of the falsity of the statements; and received payment for the false claims from the United States. Sutton may also claim damages to himself because Double Day did not pay him prevailing wages (the drafting of the complaint makes this unclear).
 
 
 4
 The United States declined to intervene. The district court held that Sutton lacked standing to bring suit under the FCA for the alleged fraudulent activity because his claim was equivalent to a Service Contract Act claim, and there is no private right of action under the SCA. Sutton appeals this decision and requests attorney's fees.
 
 DISCUSSION
 A. Standard of Review
 
 5
 We review issues of standing de novo. Sahni v. American Diversified Partners, 83 F.3d 1054, 1056 (9th Cir.), as amended (July 24, 1996), cert. denied, --- U.S. ----, 117 S.Ct. 765, 136 L.Ed.2d 712 (1997).
 
 B. Standing
 
 6
 The Service Contract Act, 41 U.S.C. §§ 351-58, requires government contractors to pay service employees minimum wages and benefits determined by the Secretary of Labor. 41 U.S.C. § 351(a). The SCA restricts employee remedies for violations of the Act to administrative channels. The SCA does not confer a private right of action to employees; the Secretary of Labor has the exclusive right to enforcement. Miscellaneous Service Workers, Drivers, & Helpers, Teamsters Local # 427 v. Philco-Ford Corp., 661 F.2d 776, 781 (9th Cir.1981). Employees have no standing to enforce their claims against employers for failure to pay SCA-required wages. Id.
 
 
 7
 The parties agree that the contracts at issue are governed by the SCA. To the extent any of Sutton's claims are for damages to himself because he was not paid SCA-required wages, Sutton lacks standing to pursue those specific claims. Id.
 
 
 8
 The False Claims Act, 31 U.S.C. §§ 3729-33, makes any person who knowingly induces the United States to make payment on a false claim liable to the United States. 31 U.S.C. § 3729(a). Violators are liable for a civil penalty between $5,000 and $10,000 for each false claim plus treble damages. Id. FCA claims may be brought by the Attorney General or by a qui tam relator. 31 U.S.C. § 3730. If a qui tam relator is successful, he or she receives a portion of the recovery. Id.
 
 
 9
 Richard Sutton brings his claim under the FCA. He alleges that Double Day executed contracts requiring payment of prevailing wages on government service contracts, knowingly made false statements to the United States regarding services rendered to create the false impression that prevailing wages had been paid, and received payment from the United States based on the false statements. Double Day argues that because Sutton's claim is based solely on violations of the SCA, it is preempted by the SCA's bar on private rights of action.
 
 
 10
 Other plaintiffs have tried to make an end-run around the SCA's bar on private rights of action by bringing actions under RICO for damages from an employer's failure to pay SCA wages. See Danielsen v. Burnside-Ott Aviation Training Center, 941 F.2d 1220 (D.C.Cir.1991). In Danielsen, the court held that allowing a plaintiff to pursue a private action under RICO for SCA-based damages would undercut the intended specific remedy prescribed by Congress in the SCA. Id. at 1228. We are persuaded by the D.C. Circuit's reasoning that a party may not bring an action for the equivalent of SCA damages under the guise of another statute.
 
 
 11
 Sutton, however, does not bring his FCA action for SCA damages. He brings his action as a qui tam plaintiff for the United States to recover for damage to the United States, not to recover for damage to himself. If his action were equivalent to an SCA action, then his damage would be his lost wages due to Double Day's failure to pay prevailing wages. 41 U.S.C. § 354(b). However, here the damage he seeks and may recover as a qui tam plaintiff are FCA civil penalties plus three times the damage to the United States. 31 U.S.C. § 3729.
 
 
 12
 Further, Sutton's FCA claim is based on different actions by Double Day than an SCA claim would be. Double Day's failure to pay Sutton prevailing wages was a violation of the SCA; however, it was not a violation of the FCA. Double Day violated the FCA when it submitted a claim for payment to the United States falsely stating that it had complied with the SCA. The FCA attaches liability to the claim for payment, not to the underlying activity. United States ex rel. Hopper v. Anton, 91 F.3d 1261, 1266 (9th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 958, 136 L.Ed.2d 844 (1997). The violation of a statute does not itself create a violation of the FCA-"[i]t is the false certification of compliance which creates liability when certification is a prerequisite to obtaining a government benefit." Id.
 
 
 13
 Because Sutton's qui tam claim under the FCA is based on different actions and for different damages than a claim under the SCA would be, his suit is not barred by the SCA's bar on private rights of action. See United States ex rel. Fallon v. Accudyne Corp., 880 F.Supp. 636, 639 (W.D.Wis.1995) (action under FCA for false claim of environmental compliance is not barred by specific remedial provisions of environmental statutes because the actions that give rise to the claims and the remedies they provide are different). Any other result would require the implausible conclusion that Congress intended to deprive the United States of a remedy for contract fraud by creating a remedy for underpayment of wages.
 
 
 14
 Double Day argues, citing Danielsen, that this holding effectively preempts the SCA because no plaintiff will pursue administrative remedies under the SCA when more lucrative remedies are available under the FCA. See Danielsen, 941 F.2d at 1228. However, in Danielsen the plaintiff was seeking to recover for damage under RICO that was exactly the same as the damage under the SCA--failure to pay plaintiff prevailing wages. Here, Sutton is trying to recover a different kind of damage--damage to the United States plus statutory damages. Regardless of what happens in this case, Sutton can still pursue his remedies for underpayment of wages under the SCA. Allowing an FCA-based claim here does not preempt the SCA because, unlike Danielsen, it is not for, and will not affect, any of the remedies or damages available through the SCA.
 
 
 15
 Further, a qui tam FCA plaintiff brings his or her action in the name of the United States. 31 U.S.C. § 3730(b)(1). That Sutton happens to be an employee who was damaged by Double Day's failure to pay SCA wages is irrelevant to his bringing an action qui tam. If Sutton were barred from bringing this action qui tam, then any plaintiff, including the United States, would also be barred from suing Double Day for its alleged fraudulent activity. This cannot be a result that Congress intended. Accepting Double Day's position would require the improbable conclusion that Congress intended to authorize suits for fraud on the government where a contractor lies about lawful actions but to preclude suits where a contractor lies about unlawful actions.
 
 
 16
 Holding that Sutton lacks standing to bring his qui tam suit would frustrate the purpose of the FCA, which was "intended to reach all kinds of fraud, without qualification, that might result in financial loss to the Government." United States v. Neifert-White Co., 390 U.S. 228, 232, 88 S.Ct. 959, 961, 19 L.Ed.2d 1061 (1968). It would also preclude qui tam actions by the people who are most likely to know that a fraud against the United States has been committed. "The archetypal qui tam FCA action is filed by an insider at a private company who discovers his employer has [defrauded the government]." Hopper, 91 F.3d at 1266.
 
 
 17
 Finally, holding that the SCA bars actions under the FCA would require concluding that the SCA impliedly preempts the FCA. It is "a cardinal principle of statutory construction that repeals by implication are not favored." Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). "[S]o long as there is no 'positive repugnancy' between two laws, a court must give effect to both." Connecticut National Bank. v. Germain, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); United States v. General Dynamics Corp., 19 F.3d 770, 774 (2nd Cir.1994) (Anti-Kickback Act does not preempt the FCA because implied preemption is strongly disfavored).
 
 
 18
 Sutton has standing to pursue his FCA claim.
 
 C. Attorney's Fees
 
 19
 Sutton seeks attorney's fees for his appeal "pursuant to 31 U.S.C. § 3730(D)(5)(d)." This subsection does not exist. The only references to attorney's fees in section 3730 are: (1) for a plaintiff where there has been a recovery against a defendant (31 U.S.C. § 3730(d)(1)-(2)); (2) for a defendant where a plaintiff brings a frivolous suit (31 U.S.C. § 3730(d)(4)); and (3) for a plaintiff where a defendant retaliates against the plaintiff for pursuing an FCA claim (31 U.S.C. § 3730(h)). The FCA also incorporates the attorney's fees provisions of the Equal Access to Justice Act, 28 U.S.C. § 2412(d). 31 U.S.C. § 3730(g). As Sutton is within none of these categories, his request for attorney's fees on appeal is premature and is DENIED without prejudice.
 
 CONCLUSION
 
 20
 The district court's holding that Richard Sutton lacks standing to bring a qui tam False Claims Act action against Double Day is REVERSED and REMANDED. To the extent any of Sutton's claims are for damages to himself because he did not receive prevailing wages, Sutton lacks standing to pursue those specific claims.
 
 
 
 *
 The Honorable Tom Stagg, Senior United States District Judge for Western Louisiana, sitting by designation